McCarthy on Trademarks and Unfair Competition, Fourth Edition

Database updated November 2009

J. Thomas McCarthy

Chapter
25. Types of Trademark Infringement

III. TYPES OF INFRINGING USAGE

D. PROPER AND IMPROPER USE OF MARKS BY DISTRIBUTORS AND DEALERS

References

**§ 25:41. Exhaustion rule: resale of branded goods without change**

**West's Key Number Digest**

West's Key Number Digest, Trademarks 🔑1423

***The "Exhaustion" or "First Sale" Doctrine.*** The logical inference to draw from the Supreme Court's COTY and CHAMPION cases discussed previously is the general rule that a distributor who resells branded goods without change is not an "infringer" and thus needs no "license."[FN1] As the Second Circuit observed:

> As a general rule, trademark law does not reach the sale of genuine goods bearing a true mark even though the sale is not authorized by the mark owner. ... Thus, a distributor who resells trademarked goods without change is not liable for trademark infringement.[FN2]

The same right extends to a retailer's use of a mark in cyberspace. A retailer can use a brand name on Web site ads selling that branded product without a license from the trademark owner.[FN3] However, a distributor cannot display a manufacturer's trademark on the distributor's Internet Web site in such a way as to confuse consumers into thinking that this is the Web site of an authorized dealer of that brand.[FN4] As the Tenth Circuit observed: "[T]he first sale doctrine does not protect resellers who use other entities' trademarks to give the impression that they are favored or authorized dealers when in fact they are not."[FN5]

The Ninth Circuit has repeated the "exhaustion" or "first sale" rule in the following terms:

> The right of a producer to control distribution of its trademarked product does not extend beyond the first sale of the product. Resale by the first purchaser of the original article under the producer's trademark is neither trademark infringement nor unfair competition.[FN6]

The Eleventh Circuit recited the "exhaustion" rule in somewhat different language, emphasizing that the rule applies only where the goods have not been altered or changed:

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

> The resale of genuine trademarked goods generally does not constitute infringement. ... Under what has sometimes been called the "first sale" or "exhaustion" doctrine, the trademark protections of the Lanham act are exhausted after the trademark owner's first authorized sale. ... Therefore, even though a subsequent sale is without an trademark owner's consent, the resale of a genuine good does not violate the [Lanham] Act... This doctrine does not hold true, however, when an alleged infringer sells trademarked goods that are materially different than those sold by the trademark owner.[FN7]

Thus, the first sale rule does not apply when the goods are altered so as to be materially different. The question of the materiality or importance of the alteration is a question of fact requiring an examination of the products and the desires of the target market.[FN7.50]

Because there is usually no trademark license relationship between a manufacturer and an independent distributor, the manufacturer is not under the same strict quality control obligations as in a formal trademark license relationship.[FN8] However, the manufacturer has the right to control the quality and method of distribution so as to control against damage to or deterioration of the goods.[FN9]

This right to resell branded products is sometimes known as the "exhaustion doctrine." Trademark rights are "exhausted" as to a given item upon the first authorized sale of that item.[FN10] As to that product purchased and resold without change, the trademark is exhausted, or alternatively, the buyer receives an implied license to use the mark in resales:

> Under this doctrine [of exhaustion], as applied within the borders of a sovereignty, a markholder may no longer control branded goods after releasing them into the stream of commerce. After the first sale, the brandholder's control is deemed exhausted. Down-the-line retailers are free to display and advertise the branded goods. Secondhand dealers may advertise the branded merchandise for resale in competition with the sales of the markholder (so long as they do not misrepresent themselves as authorized agents).[FN11]

This rule is sometimes called the "first sale" doctrine because of its similarity in principle to the "first sale" doctrine of copyright law.[FN12] The first sale doctrine of copyright law is an exception to the exclusive right of a copyright owner to distribute copies or phonorecords of the copyrighted work. Under the copyright first sale doctrine, after the first sale of a lawfully made copy of the copyrighted work, anyone who is the owner of that copy can sell or dispose of that copy in any way without copyright liability.[FN13]

It would be absurd to hold that a manufacturer could sell a branded product to a distributor without restriction and then tell the distributor that it could not resell the branded goods without either paying for a trademark "license" or removing the trademark. In fact, some have argued that it is a subtle form of infringement for a distributor to remove the mark without permission.[FN14] Some courts have stated the general rule in terms that a trademark owner who sells products, knowing that they will be resold before reaching the consumer, is held to give an implied consent to use of the mark by each dealer in the chain of distribution.[FN15]

***The Key is Resale Without Change.*** As emphasized above, it is only where the goods are resold without change that the "first" sale or "exhaustion" rule applies to cut off the trademark owner's rights. Thus, the unauthorized repackaging[FN16] or reconstruction[FN17] or other modification.[FN18] of the goods by a distributor are exceptions to the first sale defense. Such actions by the distributor can create mistake and deception as to responsibility for changes made in the goods and give the trademark owner the right to remedies ranging from ad-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

equate disclosure to an absolute prohibition on the use of the mark in such sales. In addition, the first sale defense is not applicable where a product is distributed without being subject to the trademark owner's quality control and there is some potential defect in the product that customers would not readily be able to detect.[FN19] In such cases, the product sold is not "genuine" because not subject to the trademark owner's quality control.

***Gray Goods.*** The "first sale" or "exhaustion" rule is no defense to a charge of infringement by the unauthorized sale of gray goods, because the rule only exempts the resale of genuine goods that are identical to those authorized for importation into the United States.[FN20] This is only logical, because if one applied the "first sale" or "exhaustion" defense to gray goods sales, the unauthorized importer would never be an infringer, because an unauthorized importer is always a reseller of goods.

***Stolen Goods.*** The first sale defense is not applicable to goods stolen from the trademark owner because no legally approved "first sale" has occurred.[FN21]

***Covenant Running with the Goods.*** The Ninth Circuit has held that an express condition imposed by a trademark owner on a buyer of goods as to the terms and scope of resale does not "run with the goods." That is, such a condition does not bind downstream buyers who have no notice of the condition.[FN22]

***The Right of Publicity.*** The Eleventh Circuit held that under Alabama law the first sale defense prevents sports celebrities from claiming a royalty on the resale of sports trading cards. The sports celebrities had received all of the revenue they were entitled to on the first sale of the trading cards and therefore the first sale defense of patent, copyright, and trademark law applied to exhaust the right of publicity when authorized items such as trading cards are purchased, remounted, and sold.[FN23]

---

[FN1] Trail Chevrolet, Inc. v. General Motors Corp., 381 F.2d 353, 155 U.S.P.Q. 51 (5th Cir. 1967) (Seller of used CHEVROLET autos: "The appellants should be free to advertise that they sell used Chevrolets, that they repair Chevrolet cars, that they have a number of Chevrolets to choose from, or that they sell used Chevrolets and other fine cars or the like."); Eastman Kodak Co. v. Fotomat Corp., 317 F. Supp. 304, 165 U.S.P.Q. 444 (N.D. Ga. 1969) (Seller of KODAK film: "Defendant, of course, has a right to advertise the fact that it sells 'Kodak film.'"); Dow Jones & Company, Inc. v. International Securities Exchange, Inc., 451 F.3d 295, 308, 79 U.S.P.Q.2d 1225, 1234, Comm. Fut. L. Rep. (CCH) P 30257 (2d Cir. 2006) (a trademark "generally does not prevent one who trades a branded product from accurately describing it by its brand name, so long as the trader does not create confusion by implying an affiliation with the owner of the product"). *See* § 18:41.

*See also* See Restatement Third, Unfair Competition § 24, comment b (1995) ("Thus, the trademark owner cannot ordinarily prevent or control the sale of goods bearing the mark once the owner has permitted those goods to enter commerce. It can be said that the rights of the trademark owner are exhausted once the owner authorizes the initial sale of the product under the trademark or that the owner implicitly licenses others to further market the goods under the mark."); Shinderman, "Trademark Licensing: A Saga of Fantasy and Fact," 14 Law & Contemp. Probs. 248, 252 n.27 (1949) ("The mere resale of branded goods, without change of form or packaging, would not seem to require permission from the owner in the form of a license to use the mark.").

[FN2] Polymer Technology Corp. v. Mimran, 975 F.2d 58, 24 U.S.P.Q.2d 1189 (2d Cir. 1992) (citing

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

treatise as authority).

[FN3] Patmont Motor Werks, Inc. v. Gateway Marine, Inc., 1997 WL 811770 (N.D. Cal. 1997) (defendant could sell GO-PED trademarked motorized scooters, using that mark at defendant's Web site: "[T]he Web site in question ... refers to the Go-Ped mark only to the extent necessary to identify the particular brand of scooter that he had for sale.").

[FN4] Bernina of America, Inc. v. Fashion Fabrics Intern., Inc., 57 U.S.P.Q.2d 1881, 2001 WL 128164 (N.D. Ill. 2001) (preliminary injunction against distributor of BERNINA sewing machines for using Web site that would likely mislead consumers into believing that distributor is an authorized BERNINA dealer).

[FN5] Australian Gold, Inc. v. Hatfield, 436 F.3d 1228, 77 U.S.P.Q.2d 1968 (10th Cir. 2006) (Defendant sold tanning lotions over the Internet directly to consumers in violation of plaintiff's distribution agreement, which restricted distribution by defendant solely to tanning salons and beauty salons. The first sale doctrine was no defense because defendant falsely held itself out on the Internet sites as an authorized retail dealer.).

[FN6] Sebastian Int'l v. Longs Drug Stores Corp., 53 F.3d 1073, 34 U.S.P.Q.2d 1720 (9th Cir. 1995) (the premise of the first sale doctrine is that "the consumer gets exactly what the consumer bargains for, the genuine product of the particular producer").

[FN7] Davidoff & CIE, S.A. v. PLD Intern. Corp., 263 F.3d 1297, 60 U.S.P.Q.2d 1046 (11th Cir. 2001) (an exception to the rule was found and infringement affirmed where defendant sold to discount retail stores bottles of fragrances intended for off-shore duty-free sale on which the batch code numbers had been physically etched off.). *Accord:* Softman Products Co., LLC v. Adobe Systems, Inc., 171 F. Supp. 2d 1075, 1092, 45 U.C.C. Rep. Serv. 2d 945 (C.D. Cal. 2001) ("The first sale doctrine does not apply, however, when an alleged infringer sells trademarked goods that are materially different than those sold by the trademark owner."). *See* § 25:40.

[FN7.50] Brilliance Audio, Inc. v. Haights Cross Communications, Inc., 474 F.3d 365, 35 Media L. Rep. (BNA) 1257, 81 U.S.P.Q.2d 1568, 2007 FED App. 0041P (6th Cir. 2007) ("The rationale behind the *Davidoff* exception is that a material difference in a product is likely to cause consumer confusion ... ." Reversing summary dismissal of infringement claim because materiality of the defendant's repackaging of plaintiff's audio books presents an issue of fact.).

[FN8] Star-Kist Foods, Inc. v. P.J. Rhodes & Co., 769 F.2d 1393, 227 U.S.P.Q. 44 (9th Cir. 1985) (a mere distributor of trademarked goods needs no trademark license and thus failure to control quality is irrelevant). *See* § 18:42.

[FN9] *See* §§ 25:42 et seq.

[FN10] Original Appalachian Artworks, Inc. v. Granada Electronics, Inc., 816 F.2d 68, 2 U.S.P.Q.2d 1343, 1349 (2d Cir. 1987), cert. denied, 484 U.S. 847, 98 L. Ed. 2d 99, 108 S. Ct. 143 (1987) (The doctrine of exhaustion "provides that a distributor ... has the 'right to resell a branded item in an unchanged state.' ... However, it is well-recognized that the exhaustion doctrine does not apply to genuine goods which have been altered." Cardamone, J. concurring, quoting in part from treatise.); Denbicare

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

U.S.A. v. Toys "R" Us, Inc., 21 U.S.P.Q.2d 1711 (N.D. Cal. 1991), subsequent appeal, 84 F.3d 1143, 38 U.S.P.Q.2d 1865 (9th Cir. 1996) ("The 'first sale' or 'exhaustion' doctrine is well recognized in trademark law."). *See* Restatement Third, Unfair Competition § 24, comment b (1995) ("Thus, the trademark owner cannot ordinarily prevent or control the sale of goods bearing the mark once the owner has permitted those goods to enter commerce. It can be said that the rights of the trademark owner are exhausted once the owner authorizes the initial sale of the product under the trademark or that the owner implicitly licenses others to further market the goods under the mark.").

[FN11] Osawa & Co. v. B&H Photo, 589 F. Supp. 1163, 1173, 223 U.S.P.Q. 124, 132 (S.D.N.Y. 1984).

[FN12] Sebastian Int'l v. Longs Drug Stores Corp., 53 F.3d 1073, 34 U.S.P.Q.2d 1720 (9th Cir. 1995) ("The 'first sale' rule provides a sensible and stable accommodation between strong and potentially conflicting forces"); Denbicare U.S.A. v. Toys "R" Us, 84 F.3d 1143, 38 U.S.P.Q.2d 1865 (9th Cir. 1996) ("Since the trustee's sale qualified as a first sale for copyright purposes, it is a trademark first sale as well.").

[FN13] 17 U.S.C.A. §§ 109(a), 109(d).

[FN14] *See* §§ 25:4 to 25:9.

[FN15] Chanel, Inc. v. Casa Flora Co., 100 N.J. Super. 19, 241 A.2d 24, 159 U.S.P.Q. 189 (1968), cert. denied, 51 N.J. 577, 242 A.2d 381 (1968).

[FN16] Enesco Corp. v. Price/Costco Inc., 146 F.3d 1083, 47 U.S.P.Q.2d 1144 (9th Cir. 1998); Adobe Systems Inc. v. One Stop Micro, Inc., 84 F. Supp. 2d 1086, 53 U.S.P.Q.2d 2003 (N.D. Cal. 2000) (unpacking and removing model designations). *Accord:* Softman Products Co., LLC v. Adobe Systems, Inc., 171 F. Supp. 2d 1075, 1092, 45 U.C.C. Rep. Serv. 2d 945 (C.D. Cal. 2001) ("The first sale doctrine does not apply, however, when an alleged infringer sells trademarked goods that are materially different than those sold by the trademark owner." Sale of repackaged software that lacks access to customer support and tech services "is a difference that an average customer would consider relevant to a decision about whether to purchase a product." However, preliminary injunction was denied.). *See* § 25:35.

[FN17] *See* §§ 25:39 to 25:40.

[FN18] Davidoff & CIE, S.A. v. PLD Intern. Corp., 263 F.3d 1297, 60 U.S.P.Q.2d 1046 (11th Cir. 2001) (infringement found where defendant sold to discount retail stores bottles of fragrances intended for off-shore duty-free sale on which the batch code numbers had been physically etched off). *Accord*: Montblanc-Simplo GmbH v. Staples, Inc., 172 F. Supp. 2d 231 (D. Mass. 2001), vacated pursuant to settlement agreement, 175 F. Supp. 2d 95 (D. Mass. 2001) (distributor's obliteration of one trademark and serial numbers from parallel imported MONT BLANC pens prevented manufacturer from exercising quality control: preliminary injunction granted).

[FN19] *See* § 25:42. *See, e.g.,* Denbicare U.S.A. v. Toys "R" Us, 84 F.3d 1143, 38 U.S.P.Q.2d 1865 (9th Cir. 1996) (the "first sale" or "exhaustion" rule is no defense where the goods have deteriorated in the distribution chain; but the trademark owner failed to prove that the product (diapers) either "deteriorated in the distribution chain or were the type of product subject to such deterioration").

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

[FN20] Societe Des Produits Nestle, S.A. v. Casa Helvetia, Inc., 982 F.2d 633, 25 U.S.P.Q.2d 1256, 1260 (1st Cir. 1992) ("The [first sale] maxim does not apply when genuine, but unauthorized, imports differ materially from authentic goods authorized for sale in the domestic market. Thus, ... an unauthorized importation may well turn an otherwise 'genuine' product into a 'counterfeit' one."); Martin's Herend Imports, Inc. v. Diamond & Gem Trading USA Co., 112 F.3d 1296, 42 U.S.P.Q.2d 1801, 1806 (5th Cir. 1997) (the first sale rule "applies only to identical genuine goods"). *See* § 29:51.25.

[FN21] Klein-Becker usa LLC v. Englert, 83 U.S.P.Q.2d 1112, 2007 WL 1933147 (D. Utah 2007).

[FN22] Denbicare U.S.A. v. Toys "R" Us, 84 F.3d 1143, 38 U.S.P.Q.2d 1865 (9th Cir. 1996) (bankruptcy court injunction, limiting resale to nations other than the U.S. and Canada, does not bind downstream buyers with no notice of the injunction).

[FN23] Allison v. Vintage Sports Plaques, 136 F.3d 1443, 1446, 46 U.S.P.Q.2d 1138 (11th Cir. 1998).

Westlaw. © 2009 Thomson Reuters. No Claim to Orig. U.S. Govt. Works.

MCCARTHY § 25:41

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.